UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| John Abboud, Individually and as Administrator of the Estate of Nahida Abboud, deceased, | ) ) ) ) | Case No. 5:15CV02344 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) | |
| LM General Insurance Company, et al., | ) ) ) | **ORDER** |
| Defendants. | ) | |

This matter is before the Court on motions in limine and related motions. The Court has read the motions and oppositions thereto. Having given due consideration to the parties' arguments, the Court hereby Orders the following:

(1) First Motion in Limine of Defendants Liberty Mutual Group Inc. and Liberty Mutual Insurance Company ("Liberty" or "Defendants") to Exclude Post-Accident Evidence Regarding Alleged Liability **(Doc. 72)** is **GRANTED IN PART and DENIED IN PART**;

(2) Liberty's Second Motion in Limine to Exclude Evidence of any Alleged Non-Pecuniary Damages **(Doc. 73)** is **GRANTED**;

(3) Liberty's Third Motion in Limine to Preclude Plaintiff from Conflating a Claim on Behalf of the Estate of Nahida Abboud and a Claim on Behalf of John Abboud Personally **(Doc. 74)** is **DENIED AS MOOT**, subject to reopening at the time of trial;

(4) Plaintiff John Abboud's ("Plaintiff") Motion in Limine to Preclude Liberty from Arguing that the Umbrella Policy

1

>       Clearly and Unambiguously Excludes UM/UIM Coverage, or that the Jury Need Only Look to the Policy's Language to Determine if Abboud's Reliance on Liberty's Representations was Justified **(Doc. 78)** is **DENIED**;

(5)     Plaintiff's Alternative Motion in Limine Precluding Liberty from Arguing that Events After August 9, 2012 Suggest Abboud Fabricated Liberty's Alleged Misrepresentation and from Introducing Evidence Solely to Support Such Argument **(Doc. 79)** is **DENIED**;

(6)     Motion for Conference/Hearing **(Doc. 103)** is **DENIED AS MOOT**.

The reasons for the Court's rulings are set forth below.

## I. BACKGROUND

This action arises out of an insurance claim brought by Plaintiff in relation to injuries his mother ("Mrs. Abboud") suffered when an automobile driven by a third party struck her. (Doc. 101, PageID #10, ¶¶ 14-15.) When the accident occurred, Plaintiff was the named insured of two policies: (1) an automobile policy with underinsured motorist ("UIM") coverage limits of $100,000 per person (the "Auto Policy"); and (2) a personal liability protection policy ("PLP Policy") with a personal liability limit of $2,000,000 per occurrence. (Doc. 1-1, PageID #19-51, 52-59.) Mrs. Abboud qualified as an insured under both policies.

Plaintiff made a claim in connection with the injuries Mrs. Abboud sustained in the accident. Liberty denied the claim under each policy. Plaintiff's Auto Policy has a UIM limit of $100,000, which was equal to the policy limit of the driver at fault for the accident. Under Ohio Revised Code § 3937.18(C), an insured's UIM coverage is reduced by the tortfeasor's amount of liability coverage. Plaintiff therefore had no remaining UIM coverage.

Defendants claim that Plaintiff also had no coverage under his PLP Policy. Per the insuring agreement, Plaintiff's policy provides coverage for certain claims "for which the insured is legally

2

liable." (Doc. 1-1, PageIDs #53, 58.) No "insured" was liable for Mrs. Abboud's injuries. Plaintiff filed suit against Defendants alleging several cause of action after these denials. Defendants argue that the PLP Policy unambiguously excludes UIM coverage.

The Court entered summary judgment on all of Plaintiff's causes of action in an Order and Decision dated February 27, 2017. (Doc. 61, PageIDs # 825-839.) The Sixth Circuit reversed that decision with regard to Plaintiff's claim of negligent misrepresentation only. *Abboud v. Liberty Mutual Ins. Grp.*, 711 F. App'x 773, 776-79 (6th Cir. 2017). The negligent misrepresentation claim is Plaintiff's only claim going to trial.

The negligent misrepresentation claim alleges that Defendants "affirmatively represented to [Plaintiff] that he could reduce the coverage limits on his Auto Policy and save money by purchasing the [PLP Policy] which provided the same coverages but with a higher, combined limit." (Doc. 1-1, PageID #13, ¶30.) Based on this alleged misrepresentation, Plaintiff claims that he believed that the PLP Policy provided UM/UIM coverage over and above the limit of the Auto Policy.

The alleged misrepresentation purportedly occurred on August 9, 2012, when Plaintiff called Liberty's toll-free customer service line to renew his auto insurance policy from the previous year (the "2011 Auto Policy"). (Doc. 41-1, PageIDs #416-17.) During the August 9, 2012 call, Plaintiff sought to renew the 2011 Policy, and Plaintiff alleges that he also sought information concerning a PLP policy. (Doc. 41-1, PageIDs # 457-58.) Plaintiff alleges that the customer service representative transferred him to an unknown sales representative to discuss PLP policies. (*Id.*) Plaintiff claims that the tone of these two representatives "assured him that the [PLP Policy] provided the same coverages as his underlying policy only in greater amount in excess of his

3

underlying policy." (Appellant's Brief, *Abboud v. Liberty Mutual Ins. Grp.*, 711 F. App'x 773 (Doc. 16, p 17)).

Plaintiff changed his automobile insurance limits following the August 9, 2012 phone call. Instead of renewing $1,000,000 in single-limit liability coverage under the 2011 Auto Policy, Plaintiff's 2012 policy (the "2012 Auto Policy") included liability coverage up to $250,000 per person/$500,000 per accident. (Doc. 41-1, PageIDs #417-18.) Instead of $500,000 in a single-limit UIM coverage under the 2011 Auto Policy, Plaintiff purchased $100,000 per person/$200,000 per accident UIM coverage. (*Id.*) Plaintiff did not purchase or even receive a quote for a PLP policy on that date.

These new limits are reflected in the declarations page of the 2012 Auto Policy. (*Id.*, Page IDs #538-42.) Plaintiff reviewed these limits, which included the liability and UIM coverages he expected based upon his call with the customer service representative. (*Id.*, PageID #423-24.) Plaintiff never called Liberty with any concerns regarding the 2012 Auto Policy. (*Id.*, PageID # 426.) Reducing his coverages from the 2011 Auto Policy to the 2012 Auto Policy saved Plaintiff $99. (*Id*. PageID # 420.)

Plaintiff called Liberty again three months later, in November 2012, to obtain a PLP Policy. He spoke with senior sales representative Michelle Angstadt, who for the first time gave him a quote for PLP coverage. (Doc. 41-8, PageID #623.) Plaintiff accepted the quote, and Liberty accepted payment from Plaintiff to bind the PLP coverage. (*Id*.) Plaintiff received an application for the 2012 PLP Policy which did not include any reference to Plaintiff's underlying $100,000/$200,000 of UIM coverage under the 2012 Auto Policy.

Plaintiff renewed both the 2012 Auto Policy and the 2012 PLP Policy in 2013 (the "2013 Auto Policy" and "2013 PLP Policy".) On August 13, 2014, while both the 2013 Auto Policy and

4

the 2013 PLP Policy were in effect, a vehicle struck Mrs. Abboud. The accident gave rise to this suit.

## II. DISCUSSION

### A. Admissibility of Evidence Post Alleged Misrepresentation and Post Accident

In Liberty's first motion in limine, Defendants move to exclude post-accident evidence regarding liability. Specifically, Liberty requests exclusion of a recording (the "Recording") that Plaintiff made of a phone call he placed to Liberty two weeks after Mrs. Abboud's accident, during which a Liberty representative confirmed that Plaintiff's PLP Policy includes UM/UIM coverage. Plaintiff opposes the motion. In the alternative, Plaintiff has filed a separate motion in limine arguing that, if the Recording is excluded from evidence, the Court should also "preclude Liberty from arguing events after August 9, 2012, the date of the alleged misrepresentation, suggest [Plaintiff] fabricated Liberty's misrepresentation and from introducing evidence solely to support such argument." (Doc. 79, p. 1.)

The Court holds that Liberty's motion to exclude post-accident evidence regarding liability (Doc. 72) is GRANTED IN PART and DENIEDIN PART. Plaintiff's motion to exclude evidence post-dating the alleged misrepresentation on August 9, 2012 (Doc. 79) is DENIED. The reasons for the Court's rulings are as follows.

For purposes of Liberty's motion to exclude the Recording and other post-accident liability evidence, the Court must determine whether such evidence is relevant to Plaintiff's negligent misrepresentation claim, the only claim to be tried. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

5

The Ohio Supreme Court has articulated the requirements for a negligent misrepresentation claim:

> One who, in the course of his business, profession or employment, or who in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. Cleveland Heights* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (emphasis in original) (citing 3 Restatement of Torts 2d § 552(1)).

Thus, to be liable for negligent misrepresentation, a party must, in sequence (1) make a false statement, (2) that the plaintiff reasonably relies upon, (3) which results in pecuniary loss to the plaintiff. Logically, an alleged misrepresentation made after the loss could not lead to justifiable reliance, or pecuniary loss. The misrepresentation must precede either reliance or loss.

In prior briefing to the Court, Plaintiff "concede[d] that the conversation and audio tape have no ***direct*** evidentiary value to Abboud's claims of misrepresentation of the policy's terms in 2012 . . . which are dependent entirely on Abboud's interactions with Liberty prior to the accident." (Doc. 35, PageID #264) (citation omitted) (emphasis in original). Thus, Plaintiff has acknowledged that the Recording has no evidentiary value in his case in chief to prove his sole remaining claim of negligent misrepresentation.

Case law agrees with this conclusion. In a Southern District of Ohio case, an insured based a negligent misrepresentation claim on a post-loss coverage opinion from an agent. *Mafcote, Inc. v. Genatt Associates, Inc.*, Case No. 104-CV-853, 20017 WL 537870, *10 (S.D. Ohio Feb. 14, 2007). The district court, entering judgment for the insurance company, recognized that the

6

insured "cannot prove reliance or damages" based on representations "made after the fact of the purchases" of the PLP Policy. *Id.*

In light of the foregoing, the Recording and any other post-accident liability evidence is excluded from Plaintiffs' case on direct because such evidence arises from events that (1) occurred after Plaintiff's alleged reliance upon the alleged misrepresentation; (2) occurred after the claimed loss; and (3) Plaintiff has recognized this evidence has no evidentiary value in his direct case for his negligent misrepresentation claim. The Recording, and any other post-accident events, occurred after Plaintiff allegedly relied on the misrepresentation, and after the claimed loss, precluding the Plaintiff's reliance on them in electing his insurance coverage. Although the Sixth Circuit's opinion reversing this Court's grant of summary judgment suggested that additional discovery with regard to the Recording would be appropriate, there remains an absence of any evidence that Plaintiff could have selected his insurance coverage in reliance on any statement made after the accident. Indeed, no such reliance is possible. As such, Liberty's motion in limine is granted to the extent it requests to exclude the Recording and post-accident evidence from Plaintiff's affirmative case.

Liberty also seeks to exclude the Recording from use as impeachment evidence. Liberty argues that the Recording is more prejudicial and confusing to the jury than probative, and should therefore be excluded under Federal Rule of Evidence 403(A). The Court disagrees. It is possible that, during the course of the trial, evidence of events subsequent to the accident may become admissible for purposes of impeachment, rehabilitation, and/or rebuttal. If it becomes appropriate, the Court has the ability to admonish the jury to consider the evidence for its limited purpose. Accordingly, Liberty's motion in limine is denied as to the request to exclude, at this juncture, the use of post-accident evidence for purposes of impeachment, rehabilitation, or rebuttal.

7

Plaintiff has filed a separate motion in limine arguing that, if the Recording is excluded from Plaintiff's case in chief, the Court should also "preclude Liberty from arguing events after August 9, 2012, the date of the alleged misrepresentation, suggest [Plaintiff] fabricated Liberty's misrepresentation and from introducing evidence solely to support such argument." (Doc. 79, p. 1.) In other words, because Liberty has sought to exclude evidence which post-dates the accident, the Court should also exclude all evidence which post-dates the alleged misrepresentation. The Court declines to do so, for several reasons.

First, regarding whether there has been a misrepresentation, Liberty is allowed to argue that Plaintiff is mistaken regarding his understanding of the alleged conversation in August 2012, or that the conversation simply did not occur, just as Dr. Abboud is permitted to argue that he is not mistaken and the call did occur. Such argument may require the introduction of evidence that post-dates the alleged misrepresentation.

Second, evidence that post-dates the alleged misrepresentation in August 2012 might be relevant to the jury's determination of whether Plaintiff justifiably relied on that representation. To evaluate justifiable reliance, a jury "must consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances." *Johnson v. Church of the Open Door*, 902 N.E.2d 1002, 1007 (Ohio App. 2008). Reliance is "justified if the representation does not appear unreasonable on its face and if, [] under the circumstances, there is no apparent reason to doubt the veracity of the representation." *Lu-An-Do, Inc. v. Kloots*, 721 N.E.2d 507, 514 (Ohio App. 1999). Justifiable reliance "is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case." *Amerifirst Sav. Bank of Xenia v. Krug*, 737 N.E.2d 68, 88 (Ohio App. 1999).

Here, the "nature of the transaction" and "the circumstances of the particular case" do not merely include the alleged telephone call with an unknown sales representative in August 2012. Instead, they include multiple, subsequent interactions Plaintiff had with Liberty after that date, and before the accident. These appear to include: (1) a November 2012 call in which Plaintiff bought the PLP Policy; (2) Plaintiff's receipt, review and execution of the PLP application; (3) Plaintiff's receipt and review of the PLP Policy itself; (4) a March 17, 2013 change to Plaintiff's automobile coverage; (5) a March 19, 2013 policy change to Plaintiff's automobile coverage; (6) Plaintiff's August 2013 renewal of his automobile policy; and (7) the November 2013 renewal of the PLP Policy.

A jury cannot determine whether Plaintiff justifiably relied on the alleged August 2012 conversation with the Liberty representative unless the jury knows the events that occurred after that alleged call and before the accident. Indeed, even as the Sixth Circuit reversed this Court's grant of summary judgment for Liberty' on Plaintiff's negligent misrepresentation claim, it noted that the language of the PLP application and of the PLP Policy that Plaintiff received after the alleged conversation create issues of fact for the jury's consideration. *Abboud*, 711 Fed. Appx. at 779. Given that these documents leave a genuine issue of material fact for the jury's consideration, this Court cannot exclude them on a motion in limine.

For the foregoing reasons, the Court holds that Liberty's motion to exclude post-accident evidence regarding liability (Doc. 72) is GRANTED IN PART and to the extent that the Recording and other post-accident evidence may not be presented by Plaintiff as part of his case in chief. However, Liberty's motion is also DENIED IN PART, and to the extent that Liberty requests this Court to hold that Plaintiff may not, under any circumstances, use the Recording or other post-accident evidence for purposes of impeachment, rehabilitation, or rebuttal. The Court further holds

9

that Plaintiff's motion to exclude evidence post-dating the alleged misrepresentation on August 9, 2012 (Doc. 79) is DENIED.

B.   **Admissibility of Evidence Regarding Negligent Misrepresentation Damages**

In Liberty's second motion in limine, Defendants seek to exclude evidence of any alleged non-pecuniary damages. Liberty argues that damages which are not pecuniary loses are not recoverable for a negligent misrepresentation claim, and thus, evidence concerning them should be excluded. Plaintiff agrees that only pecuniary losses are recoverable for a negligent misrepresentation claim, but disagrees with Liberty regarding what constitutes a pecuniary loss and the evidence admissible to prove such a loss. For the reasons explained, the Court adopts the definition of pecuniary loss espoused by Liberty, and holds that Liberty's Second Motion in Limine to Exclude Evidence of Any Alleged Non-Pecuniary Damages is GRANTED (Doc. 73).

Ohio law limits the damages available for a negligent misrepresentation claim to those damages necessary to compensate a plaintiff for the pecuniary loss he suffers as a result of the misrepresentation. *See, e.g.*, *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 622 N.E.2d 1093, 1104 (Ohio Ct. App. 1993) (citing 3 Restatement of Torts 2d, 126-127, Section 552B). Liberty seeks to exclude any damages evidence which does not have a nexus to an identifiable pecuniary, or "economic," loss.

According to the appellate court in *McCarthy*:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including:
>
> > (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
> >
> > (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
>
> (2) The damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

*Id.*

"Pecuniary loss" – as opposed to the benefit of the bargain damages prohibited under *McCarthy* for negligent misrepresentation claims – is defined as a "loss of money or something by which money may be acquired." *Niepsuj v. Niepsuj*, Case No. 21888, 2004 WL 1778883, *2 (Ohio Ct. App. Aug. 11, 2004) (citing *Kennedy v. Byers*, 140 N.E. 630, 631 (Ohio 1923)). "Pecuniary loss" is further defined as "economic loss." *Brocker v. Glitsch Field Servs./NDE Inc.*, Nos. 97-CA-96, 97-CA-216, 1999 WL 476254, *10 (Ohio Ct. App. 1999) (citing *Black's Law Dictionary* (6th Ed. 1990)). "Economic loss," in turn, is defined by "pecuniary harms." *See Hartman v.*

*Conseco Senior Health Ins. Co.*, No. 3:08CV099, 2010 WL 2025482, *1 (S.D. Ohio May 18, 2010).

Ohio Revised Code Section 2315.18 describes the categories of evidence which are recoverable economic damages in tort actions. The Revised Code identifies three categories of such damages:

> (a) All wages, salaries, or other compensation lost as a result of an injury or loss to person or property that is a subject of a tort action;
>
> (b) All expenditures for medical care or treatment, rehabilitation services, or other care, treatment, services, products, or accommodations as a result of an injury or loss to person or property that is a subject of a tort action;
>
> (c) Any other expenditures incurred as a result of an injury or loss to person or property that is a subject of a tort action, other than attorney's fees incurred in connection with that action.

R.C. § 2315.18(A)(2)(a)-(c). If the harm is not pecuniary in nature, it is not an "economic loss," and rather is a non-economic loss not recoverable in a negligent misrepresentation claim. R.C. 2315.18(A)(4); *McCarthy, Lebit, Crystal & Haiman Co.*, *L.P.A.*, 622 N.E.2d at 1104.

Liberty argues that Plaintiff's damages evidence must be limited to the three categories identified in Ohio Revised Code § 2315.18(A)(2)(a)-(c). Liberty posits that evidence not falling into one of these categories is properly excluded as irrelevant under Federal Rule of Evidence 401. (Doc. 73, p. 3.)

Plaintiff agrees that the damages recoverable for negligent misrepresentation are pecuniary in nature, but disagrees with Liberty as to the proper measure of pecuniary damages. For several reasons, Plaintiff asserts that the damages evidence in this case need not be limited to the categories set forth in the Revised Code, but rather should encompass the value of the insurance contract Plaintiff allegedly believed he had. In support of his position, Plaintiff first argues that the

12

Supreme Court of Ohio has not adopted Restatement Section 552B as cited in *McCarthy*, along with its express preclusion of the "benefit of the plaintiff's contract with the defendant" from the category of recoverable pecuniary damages. This argument is not particularly persuasive, however. It does not appear that the Supreme Court has expressed a disinclination to follow the position taken in the Restatement in the same manner as it was followed by the Eighth District Court of Appeals in *McCarthy, Lebit, Crystal & Haiman Co., L.P.A.*, or indicated that it would define pecuniary damages in any other way.

Plaintiff further argues that "*McCarthy, Lebit, Crystal & Haiman Co., L.P.A.* and the other cases citing Restatement Section 552B do not involve misrepresentation of coverage afforded under a policy sold by an insurance carrier." (Doc. 93, p. 2.) Plaintiff goes on to cite *Staurt v. Nat'l Indem. Co.*, 454 N.E.2d 158, 165 (Ohio App. 1982), and other decisions outside of Ohio, for the proposition that the measure of damages for tortious misrepresentation that insurance has been provided is the loss sustained by the failure to provide that coverage, *i.e.*, the benefit of the bargain that the plaintiff believed he or she had made with the insurer. However, *Staurt*, also decided by the Eighth District Court of Appeals, predates *McCarthy*. Furthermore, unlike this case, *Staurt* involved liability for the failure of the defendant insurance sales agency and its president to obtain insurance coverage at all for the plaintiff in that case, and damages resulting from the plaintiff's reliance that coverage had been effected. It did not involve an alleged misrepresentation about the nature or extent of coverage that indeed was applied for, obtained, and effected. Thus, *Staurt* is not factually on all fours with the instant case.

Plaintiff also relies extensively on a non-Ohio case, *Lewis v. Citizens Agency of Madelia, Inc.*, 235 N.W.2d 831, 835-83 (Minn. 1975), to argue that "benefit of the bargain" rather than "out of pocket" damages are the appropriate measure of damages for negligent misrepresentation in the

context of insurance coverage. In *Lewis*, the defendant agent negligently represented to the plaintiff that her husband had earlier purchased a life insurance policy, when he actually had purchased an annuity. When the plaintiff's husband died, she tried to redeem the policy, only to discover its true nature. The court did not simply award plaintiff the out of pocket expense of the premiums her husband paid for the annuity. Indeed, the premiums were not plaintiff's reliance, but her husband's. Rather, the court awarded damages in the amount of the death benefit of the non-existent insurance policy that the plaintiff thought her husband had purchased. The court did this because the plaintiff forewent purchasing alternative or additional insurance on the basis of the defendant's representations. *Id.*

This Court is not convinced that the *Lewis* court in fact awarded the plaintiff with "benefit of the (hypothetical) bargain" damages. Instead, this Court agrees with the analysis of *Lewis* set forth by the United States Court of Appeals for the Seventh Circuit in *Trytko v. Hubbell, Inc.*, 28 F.3d 715 (7th Cir. 1994). In *Trytko*, the appellate court explained that, while expectations negligently created are not recoverable, benefits foregone as a result of such expectations are recoverable pecuniary loss. *Id.* at 723. The court stated:

> In one sense, measuring the [*Lewis*] plaintiff's recovery by what she had been assured existed seems to award her the benefit of hypothetical bargain to buy life insurance. But, in fact, the misrepresentation in *Lewis* did not lead the plaintiff into a bargain which she sought to enforce. Rather, the misrepresentation caused her to forgo something valuable, which, happenstantially, was a "bargain." *Its* benefit is not what § 552(B)(2) bars from recovery. Section 552B(2) only directs that a plaintiff is not entitled to recover for expectancy created by the defendant's negligent misrepresentations – *i.e.*, the benefit of a negligently described and induced bargain. But while expectations negligently created are not recoverable, benefits foregone as a result of such expectations are. Illustrations from the Restatement make clear that reliance is fully recoverable even when it matches expectancy []. The *Lewis* court simply and appropriately awarded the "pecuniary loss suffered …as a consequence of the recipient's reliance upon the

14

> misrepresentation;" namely, the value of a valid life insurance
> policy that she would have acquired had the defendant not made her
> think that she possessed one already.

*Id.*. Under this analysis, *Lewis* is not at odds with the Restatement's prohibition against the award of benefit of the hypothetical contract damages in a negligent misrepresentation case. Accordingly, Plaintiff's argument that *Lewis* supports the admission of evidence to show benefit of an expected bargain damages lacks merit.

For the reasons explained, Liberty's Second Motion in Limine to Exclude Evidence of Any Alleged Non-Pecuniary Damages (Doc. 73) is GRANTED. Plaintiff may not introduce damages evidence to recover the benefit of the bargain he believed he had made, or of non-pecuniary loss such as Mrs. Abboud's pain and suffering and Dr. Abboud's loss of consortium.

### C.  **Admissibility of Argument or Evidence that Conflates the Claims of Plaintiff and Mrs. Abboud's Estate**

Defendant has moved "to preclude Plaintiff from suggesting or arguing at trial that (1) any misrepresentation made to Dr. John Abboud personally satisfies the liability burdens of the Estate of Nahida Abboud's claim against Defendants; or (2) that any damages suffered by Mrs. Abboud or her Estate satisfy the damages burdens of any personal claim Dr. About has against Defendants." (Doc. 74, p. 2.) Plaintiff counters that "Liberty's assertion that the Estate cannot provide its claim based on misrepresentations to, or reliance by, Dr. Abboud, is contrary to Ohio law which recognizes a third-party beneficiary's right to maintain negligent procurement and negligent misrepresentation claims based on the named-insured's interactions with the insurance agent." (Doc. 89, p. 1.)

The Court believes that the issue raised may be mooted at least to some extent by the Court's decision regarding the inadmissibility of evidence to prove benefit of the bargain damages.

Accordingly, the Court denies Liberty's motion (Doc. 74) as moot, subject to reopening at trial as may become appropriate under the circumstances.

D. **Admissibility of Argument that the PLP Policy Is Unambiguous**

Plaintiff moves in limine to preclude Liberty from arguing that the umbrella policy clearly and unambiguously excludes underinsured motorist coverage, or that the jury need only look to the PLP Policy's language to determine if Abboud's reliance on Liberty's representations was justified. For the reasons explained below, Plaintiff's motion (Doc. 78) is DENIED.

Plaintiff contends that argument that the PLP Policy is unambiguous should be excluded because on appeal from this Court's grant of summary judgment "the Sixth Circuit disagreed with Liberty's conclusion that the policy was unambiguous and reversed the decision granting Liberty summary judgment, concluding that the jury could find Abboud's reliance on Liberty's representations justified despite the policy's language." (Doc. 78.) This Court takes a contrary view.

Plaintiff filed this action as a breach of contract claim, among other things. (Doc. 1-1, ¶¶ 18-28.) Plaintiff's breach of contract allegation included that the PLP Policy was ambiguous in terms of whether it provided UM/UIM coverage and that, as a result, "a reasonable insured could interpret this ambiguity as meaning the PLP Policy follows form to the underlying Auto Policy and provide [sic] UM/UIM coverage in excess of the Auto Policy[.]" (*Id.*, ¶ 25.)

When Liberty moved for summary judgment on Plaintiff's breach of contact claim, Plaintiff abandoned it. In Plaintiff's opposition to summary judgment, Plaintiff conceded that "Abboud does not believe there is sufficient evidence to maintain his claims for intentional misrepresentation or breach of contract (aside from Liberty's agreement and undertaking to procure insurance coverage)[.]" (Doc. 46, PageID #713, fn. 1.) This Court agreed, entering

summary judgment for Liberty on the breach of contract claim. (Doc. 61, Page ID #830.) In reaching this decision, this Court concluded that Liberty had not breached the PLP Policy by denying Plaintiff's UIM claim thereunder, and therefore impliedly concluded that the PLP Policy unambiguously did not provide UM/UIM coverage.

Plaintiff did not appeal this portion of the summary judgment decision, and therefore the issue of ambiguity of contract language was not before the Sixth Circuit. The Circuit's observation that it did not "find the UM/UIM language in the [] [P]olicy itself to be unambiguous" is therefore not "law of the case."

Accordingly, the issue currently before the jury is whether, despite the language of the PLP Policy, Plaintiff could reasonably have relied on Liberty's alleged misrepresentation about the coverage provided in the PLP Policy. Liberty is entitled, therefore, to argue that Plaintiff's reliance on any misrepresentation was not justifiable in light of the PLP Policy language, just as Plaintiff may argue justifiable reliance in the face of that same language. Plaintiff's motion to exclude such argument (Doc. 78) is DENIED.

### E. Necessity of a Conference Regarding Motions in Limine

The parties have jointly requested a conference to argue the motions in limine discussed herein. In light of the Court's rulings on the motions in limine, the motion for a conference (Doc. 103) is DENIED.

## III. CONCLUSION

In accordance with the foregoing, the Court makes the following rulings:

> (1) First Motion in Limine of Defendants Liberty Mutual Group Inc. and Liberty Mutual Insurance Company ("Liberty" or "Defendants") to Exclude Post-Accident Evidence

Regarding Alleged Liability **(Doc. 72)** is **GRANTED IN PART and DENIED IN PART**;

(2) Liberty's Second Motion in Limine to Exclude Evidence of any Alleged Non-Pecuniary Damages **(Doc. 73)** is **GRANTED**;

(3) Liberty's Third Motion in Limine to Preclude Plaintiff from Conflating a Claim on Behalf of the Estate of Nahida Abboud and a Claim on Behalf of John Abboud Personally **(Doc. 74)** is **DENIED AS MOOT, subject to reopening at the time of trial**;

(4) Plaintiff John Abboud's ("Plaintiff") Motion in Limine to Preclude Liberty from Arguing that the Umbrella Policy Clearly and Unambiguously Excludes UM/UIM Coverage, or that the Jury Need Only Look to the Policy's Language to Determine if Abboud's Reliance on Liberty's Representations was Justified **(Doc. 78)** is **DENIED**;

(5) Plaintiff's Alternative Motion in Limine Precluding Liberty from Arguing that Events After August 9, 2012 Suggest Abboud Fabricated Liberty's Alleged Misrepresentation and from Introducing Evidence Solely to Support Such Argument **(Doc. 79)** is **DENIED**;

(6) Motion for Conference/Hearing **(Doc. 103)** is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

                                            s/John R. Adams
                                            JOHN R. ADAMS
                                            UNITED STATES DISTRICT JUDGE

**DATED**: 8/28/18